IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JACQUELYNE MCKEE, and JUSTIN )
MCKEE, )
) No. 10-2730
Plaintiffs, )
)
v. )
)
MELTECH, INC., )
)
Defendant. )

---

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR COMPEL
ARBITRATION

---

Plaintiffs Jacquelyn McKee ("Jacquelyn") and Justin McKee
("Justin") (collectively, the "McKees") bring claims for breach
of contract, unjust enrichment, appropriation of name or
likeness, and violation of the Tennessee Personal Rights and
Protection Act ("TPRPA"), Tenn. Code Ann. §§ 47-25-1101 et.
seq., against Defendant Meltech, Inc. ("Meltech"). (See Compl.
¶¶ 2-4, 16-29, ECF No. 1.) Meltech has moved to dismiss or
compel arbitration. (See Mot. to Dismiss and/or to Compel
Arbitration, ECF No. 9.) The McKees have responded in
opposition. (See Pls.' Resp. to Mot. to Dismiss and/or to
Compel Arbitration, ECF No. 10.) ("Pls.' Resp.") For the
following reasons, the Court GRANTS Meltech's motion to dismiss,

DISMISSES the McKees' claims, and DENIES Meltech's motion to compel arbitration as MOOT.

## I.   Background

This dispute stems from a business relationship between Jacquelyn, an adult model known as "Foxy Jacky" on the internet and in print, and Meltech, a company with which she contracted to pose on the website www.foxyjacky.com. (See Compl. at 1, ¶¶ 2-3.) In March 2008, Jacquelyn entered and won a contest to become a model for Meltech. (See id. at 1, ¶ 7.) On May 8, 2008, she entered into a written contract with Meltech, providing that she was to perform various services, including submitting photographs and videos and "perform[ing] various other model/entertainment acts through the website," www.foxyjacky.com.[1] (See id. ¶ 9.)

Meltech required a waiver and release to be signed before it posted material on the website that Jacquelyn had submitted. (See id. ¶ 11.) Each time she submitted new material, Jacquelyn submitted a waiver and release that authorized Meltech to use her image in photographs and other media on the website. (Id. ¶ 12.) Justin, Jacquelyn's husband, "appeared in numerous media with his wife during the time the contract was in effect," but

---

[1] Although the complaint states that the parties executed the written contract on May 8, 2008, the contract itself, which is attached to Meltech's motion, demonstrates that the parties executed it on May 11, 2008. (See Ex. B., ECF No. 9-3.) The Court relies on the date in the McKees' complaint, but whether the written contract was executed on May 8, 2008, or May 11, 2008, is immaterial.

was never compensated for his appearances and never signed a waiver permitting the use of his image on the website. (See id. ¶¶ 3, 13-14.)

On October 12, 2009, Meltech sent Jacquelyn a thirty-day notice of cancellation of her contract. (Id. ¶ 10.) Despite that cancellation, Meltech has "continue[d] to update the website with what would appear to be new material" portraying the McKees. (Id. ¶ 15.)

On October 13, 2010, the McKees filed their complaint. (See Compl.) Jacquelyn alleges a claim for breach of contract, and Justin alleges claims for unjust enrichment, appropriation of name or likeness, and violation of the TPRPA. (See id. ¶¶ 16-29.) Meltech has moved to dismiss those claims or to compel arbitration. (See Mot. to Dismiss and/or to Compel Arbitration.)

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The McKees assert that this Court has subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). (See Compl. ¶ 5.) The McKees are citizens of Tennessee. (Id. ¶¶ 2-3.) Meltech is a Nebraska corporation with its principal place of business in Nebraska. (See id. ¶ 4.) Therefore, complete diversity exists. See V & M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation

3

omitted).   Because the McKees seek compensatory damages of $700,000 and an unnamed amount of punitive damages, more than $75,000 is in controversy.  (See Compl. at 6.)  Therefore, the amount-in-controversy requirement is satisfied.  See 28 U.S.C. § 1332(a).  This Court has subject matter jurisdiction.

### B. Personal Jurisdiction

"In a diversity action, the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations."  Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005) (citing Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) and Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1115 (6th Cir. 1994)).  "Where the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."  Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003) (citing Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996)).  Because "the Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause," federal courts in Tennessee may exercise personal jurisdiction if doing so is consistent with federal due process requirements.  Id. (citing

Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 454 (6th Cir. 1993)).

Meltech argues that the McKees have not established personal jurisdiction. (See Mem. in Supp. of Mot. to Dismiss and/or Compel Arbitration 1-3, ECF No. 9-1.) ("Def.'s Mem.") It asserts that it "does not have sufficient minimum contacts with Tennessee" to subject it to personal jurisdiction in this Court. (See id. at 3.) The McKees argue that, because Meltech "transacts business" in Shelby County, Tennessee, and specifically "receives transmissions" from the McKees, "who model[] almost exclusively in Shelby County, Tennessee," Meltech is subject to personal jurisdiction in Tennessee.

"Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be specific or general, depending on the type of minimum contacts maintained by the out-of-state defendant. Id. (citing Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994)). The Sixth Circuit applies a three-part test to determine whether specific personal jurisdiction exists.

> First, the defendant must <u>purposefully avail</u> [it]self of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must <u>arise from</u> the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant <u>reasonable</u>.

<u>Id.</u> (quoting <u>S. Mach. Co. v. Mohasco Indus., Inc.</u>, 401 F.2d 374, 381 (6th Cir. 1968)) (emphasis added).

### 1. Purposeful Availment

To satisfy the first requirement of specific personal jurisdiction, the defendant "must have purposefully availed himself of 'the privilege of acting in the forum state or causing a consequence in the forum state.'" <u>Id.</u> Where a defendant's contacts with the forum state result from actions the defendant himself undertakes, the defendant has purposefully availed himself of the privilege of acting in the state. <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)). Physical presence in the forum state is not required, but a defendant's connection to the forum state must be "substantial," rather than a result of "random," "fortuitous," or "attenuated" circumstances. <u>Id.</u>

"The Supreme Court has emphasized, with respect to interstate contractual obligations, that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to

regulation and sanctions in the other State for the consequences of their activities." _Lak, Inc. v. Deer Creek Enters._, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting _Burger King_, 471 U.S. at 473) (internal quotation marks omitted).  Entering into a contract with a plaintiff in the forum state does not "automatically establish sufficient minimum contacts" and subject a defendant to personal jurisdiction in the forum state. See _Air Prods._, 503 F.3d at 551 (citation omitted); _Lak, Inc._, 885 F.2d at 1301 (citation omitted).  "Factors to consider are 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" _Air Prods._, 503 F.3d at 551 (quoting _Burger King_, 471 U.S. at 479).  An employment contract performed by the plaintiff in the forum state with the "knowledge and acquiescence" of the defendant provides sufficient minimum contacts to make the defendant subject to personal jurisdiction in the forum state. See _Hige v. Turbonetics Holdings, Inc._, 662 F. Supp. 2d 821, 830 (E.D. Mich. 2009).

Like the defendant in _Hige_, who had entered into an employment contract with a Michigan resident, Meltech entered into a contract with Jacquelyn, a Tennessee resident, under which she agreed to provide Meltech with various services for a year. See _Hige_, 662 F. Supp. 2d at 830; (Compl. ¶ 9; Ex. B, ECF No. 9-3).  Although the complaint does not explicitly state

7

where Jacquelyn performed the services for Meltech, drawing all
inferences in her favor, at least some of those services were
performed in Tennessee, with the "knowledge and acquiescense,
and even facilitation of" Meltech. See Hige, 662 F. Supp. 2d at
830; (Compl. ¶ 9 (noting that Jacquelyn "submitted" photographs
and videos she had taken through the website)). By entering
into that continuing relationship, Meltech purposefully availed
itself of the privilege of acting in Tennessee. See Air Prods.,
503 F.3d at 550.

Meltech also purposefully availed itself of the privilege
of acting in Tennessee by operating a website. That constitutes
personal availment "if the website is interactive to a degree
that reveals specifically intended interaction with residents of
the state." Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002)
(quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883,
890 (6th Cir. 2002)) (internal quotation marks omitted). To
determine whether a defendant's website constitutes personal
availment, courts use a sliding scale approach. Cadle Co. v.
Schlichtmann, 123 F. App'x 675, 678 (6th Cir. 2005) (citing
Neogen, 282 F.3d at 890 and Revell v. Lidov, 317 F.3d 467, 472
(5th Cir. 2002)). The sliding scale "distinguishes between
interactive websites, where the defendant establishes repeated
online contacts with residents of the forum state, and websites
that are passive, where the defendant merely posts information

on the site." Id. "Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction." Id. (citing Neogen, 282 F.3d at 889-91).

The McKees allege that, under Jacquelyn's contract with Meltech, she "submit[ted] photographs [and] videos and perform[ed] various other model/entertainment acts through the website." (Compl. ¶ 9.) The complaint demonstrates that the website is "interactive to a degree that reveals specifically intended interaction with" Jacquelyn, who is a resident of Tennessee. See Bird, 289 F.3d at 874. Meltech purposefully availed itself of the privilege of acting in Tennessee. See id. at 874-75.

Based on Meltech's contractual relationship with Jacquelyn and its maintenance of a website specifically intended to interact with her, it has purposefully availed itself of the privilege of acting in Tennessee.

### 2. Arising From

The second requirement for specific personal jurisdiction is that the plaintiff's claims "arise from" the defendant's contacts with the forum state. Air Prods., 503 F.3d at 553. The Sixth Circuit has phrased the test for this requirement in a number of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's

contacts, . . . or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." Id. (internal citations omitted). Regardless of its phrasing, this standard is a lenient one. Bird, 289 F.3d at 875. A cause of action need not formally arise from a defendant's contacts with the forum. Id. Rather, the test requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." Bird, 289 F.3d at 875 (quoting Third Nat'l Bank in Nashville v. Wedge Grp., Inc., 882 F.2d 1087, 1091 (6th Cir. 1989)) (internal quotation marks omitted).

Meltech's contacts with Tennessee are its contractual relationship with Jacquelyn and its interactive website, through which Jacquelyn submitted photographs and videos. (See Compl. ¶ 9.) The McKees allege that Meltech breached its contract. (See id. ¶¶ 9, 17-19.) They also allege that, in accepting Justin's services for and through the website without compensation and using his image on the website, Meltech is liable for unjust enrichment, appropriation of name or likeness, and violation of the TPRPA. (See id. ¶¶ 20-29.) Based on those allegations, there is a "substantial connection" between the McKees' claims and Meltech's contacts with Tennessee. Cf. Bird, 289 F.3d at 875 (finding that a plaintiff's claims were related to defendants' contacts with the forum state because the

10

defendants' operation of a website created the contacts and the factual basis for the plaintiff's claims).   The McKees' claims arise from Meltech's contacts in Tennessee.

### 3. Reasonableness

The third requirement for specific personal jurisdiction is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Air Prods., 503 F.3d at 554 (quoting S. Mach. Co., 401 F.2d at 381).   If the first two requirements for specific personal jurisdiction are met, an inference arises that the third requirement is also met. Bird, 289 F.3d at 875.   If "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Air Prods., 289 F.3d at 554.

Because the first two requirements for personal jurisdiction have been met, there is an inference that the Court may reasonably exercise jurisdiction over Meltech. See Bird, 289 F.3d at 875.   Meltech has not stated any case, much less a compelling one, that additional considerations make the Court's exercising jurisdiction unreasonable. See Air Prods., 289 F.3d at 554.   Doing so is reasonable.

For the foregoing reasons, the Court's exercise of specific personal jurisdiction over Meltech comports with federal due process requirements.  Subject matter and personal jurisdiction are proper.

### III. Venue & Choice of Law

#### A. Venue

Under 28 U.S.C. § 1391, a civil action whose jurisdiction is premised on diversity of citizenship may be brought in one of three judicial districts, including one "in which a substantial part of the events or omissions giving rise to the claim occurred."   See 28 U.S.C. § 1391(a)(2).   "The burden of establishing venue falls on the plaintiffs, and, as here, on a Motion to Dismiss for improper venue, the court may examine facts outside of the complaint but 'must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'"   Receiver of Assets of Mid-America Energy, Inc. v. Coffman, 719 F. Supp. 2d 884, 890-91 (M.D. Tenn. 2010) (quoting Gone to the Beach, LLC v. Choicepoint Serv., 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006)).

"Plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to plaintiff's claim."   First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263-64 (6th Cir. 1998) (citation

omitted); see Sweigert v. Control Data Sys., 41 F. App'x 805, 806 (6th Cir. 2002) (citation omitted).  If substantial activities took place in the filing district, that "more substantial" activities took place in another district does not make venue improper in the filing district.  See id. (citation omitted).

Meltech argues that venue is not proper because the McKees "have failed to set forth any facts . . . which would tend to show that a substantial portion of the alleged actions of Meltech . . . took place in this district." (See Def.'s Mem. 4.)  Although the McKees concede that Jacquelyn signed a written contract in Lincoln, Nebraska, they argue that "nearly all actions related to the website occurred in this district." (Pls.' Resp. 3.)  Specifically, they contend that "nearly every single performance done by [them] as well as the technical responsibilities for the website [have] been performed within this district." (See id.)

The McKees allege that, under Jacquelyn's contract with Meltech, she "submit[ed] photographs [and] videos and perform[ed] various other model/entertainment acts through the website." (Compl. ¶ 9.)  They also allege that Justin "performed other functions for the website, including . . . filming and taking photographs of . . . Jacquelyn." (Id. ¶ 23.)  Although the complaint does not explicitly state where Jacquelyn

13

submitted her media to the website or where Justin performed his duties, the McKees reside in this judicial district, and they have asserted in their response that they performed their services in this district. (<u>See</u> Compl. ¶¶ 2-3; Pls.' Resp. 3.) Other than the execution of the contract, those events are the only ones that give rise to the McKees' claims against Meltech. Drawing all reasonable inferences in their favor, a substantial part of the events giving rise to the McKees' claims occurred in this district.  <u>See</u> <u>First of Mich. Corp.</u>, 141 F.3d at 263; <u>Coffman</u>, 719 F. Supp. 2d at 890-91.  Venue is proper under 28 U.S.C. § 1391(a)(2).

### B. Choice of Law

In a diversity action, state substantive law governs.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).  A federal district court is required to apply the choice of law rules of the state in which it sits.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."  <u>Id.</u>  Therefore, Tennessee choice of law rules apply.

Jacquelyn's claim sounds in contract.  For contract claims, Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary

14

intent.  <u>Vantage Tech., LLC v. Cross</u>, 17 S.W.3d 637, 650 (Tenn.
Ct. App. 1999) (citing <u>Ohio Cas. Ins. v. Travelers Indem. Co.</u>,
493 S.W.2d 465, 467 (Tenn. 1973)).   Jacquelyn and Meltech
executed a written contract in Lincoln, Nebraska, which provides
that Nebraska law governs the contract's terms.  (<u>See</u> Ex. B ¶
13; <u>see also</u> Pls.' Resp. at 2-3.)   Jacquelyn does not allege
that Meltech breached that written contract, but rather alleges
that Meltech breached a separate contract formed when she
entered a contest to become a model for Meltech.  (<u>See</u> <u>id.</u> ¶¶
17-18; Pls.' Resp. 3-4.)   Because it is unclear whether that
alleged contract was formed in Nebraska or Tennessee, the Court
will consider the law of both jurisdictions.

    Justin's claims sound in quasi-contract and tort.
Tennessee has adopted the "most significant relationship" rule
for torts under the Restatement (Second) of Conflict of Laws,
which provides that "the law of the state where the injury
occurred will be applied unless some other state has a more
significant relationship to the litigation."  <u>Hataway v.
McKinley</u>, 830 S.W.2d 53, 59 (Tenn. 1992).   Justin's alleged
injury occurred in Tennessee, and Meltech assumes that Tennessee
law applies.  (<u>See</u> Def.'s Mem. 8-10.)   No state has a more
significant relationship to Justin's claims.   Therefore, the
Court will apply Tennessee substantive law to his claims.

    **IV.  Motion to Dismiss**

## A. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555). Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

### B. Analysis

#### 1. Breach of Contract

To be enforceable under Tennessee law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Jane Doe, et al. v. HCA Health Servs. of Tenn., Inc., d/b/a HCA Donelson Hospital, 46 S.W.3d 191, 196 (Tenn. 2001) (quoting Higgins v. Oil, Chem., & Atomic Workers Int'l Union, Local # 3-677, 811 S.W.2d 875, 879 (Tenn. 1991)). Although a contract may be written or oral, it "must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." Id.; see also Jones v. LeMoyne-Owen Coll., 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009) (citation omitted). A contract's terms "are sufficiently definite if they provide a basis for determining whether a breach has occurred and for

giving an appropriate remedy." Jones, 308 S.W.3d at 904; see Doe, 46 S.W.3d at 196. "If the essential term or terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." Peoples Bank of Elk Valley v. Conagra Poultry Co., 832 S.W.2d 550, 553-554 (Tenn. Ct. App. 1991) (citing Restatement (Second) of Contracts, § 33 (1981)).

Nebraska applies similar principles. To form a contract under Nebraska law, "there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." See MBH, Inc. v. John Otte Oil & Propane, Inc., 727 N.W.2d 238, 248 (Neb. Ct. App. 2007) (citing Davco Realty Co. v. Picnic Foods, Inc., 252 N.W.2d 142, 146 (Neb. 1977)). "A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement." Id. (citing Neb. Nutrients v. Shepherd, 626 N.W.2d 472, 499 (Neb. 2001)); see also Keating v. Ironwood Golf & Country Club, No. A-05-967, 2007 WL 2417378, at *3 (Neb. Ct. App. Aug. 28, 2007) (citing Cimino v. FirsTier Bank, 530 N.W.2d 606, 614 (Neb. 1995)). "Whether oral or written, the language which forms the basis of an alleged employment contract must be accepted and consideration furnished." See Keating, 2007 WL 2417378, at *3 (citing Blinn

v. Beatrice Cmty. Hosp. & Health Ctr., 708 N.W.2d 235, 245 (Neb. 2006)).

Although Jacquelyn alleges that she entered into a written contract with Meltech on May 8, 2008, her breach of contract claim is based on her participation in Meltech's contest.[2] (See Compl. ¶¶ 9, 16-19; Pls.' Resp. 6-7.)  She alleges that she "entered a contact on or around March of 2008 to become a model for" Meltech; that "[f]or winning the contest," Meltech promised to pay her $100,000, provide a leased vehicle for one year, and provide a fully furnished apartment for one year; and that Meltech "failed to uphold their [sic] obligations under the contest." (See Compl. ¶¶ 17-19.)

Meltech argues that Jacquelyn has failed to state facts showing that the parties plausibly formed a contract based on Jacquelyn's entering and winning the contest. (See Def.'s Mem. 7-8.)  Jacquelyn responds that Meltech's solicitation of participants for the contest constitutes an offer and that she accepted that offer by agreeing to become a model for Meltech. (See Pls.' Resp. 3-4.)

Tennessee has adopted the view of the Restatement (Second) of Contracts, which distinguishes preliminary negotiations and

---

[2]  In her response, Jacquelyn concedes that she seeks to enforce promises associated with her entry in the contest, apparently recognizing that, if she were seeking to recover under the May 8, 2010 written contract, she would be required to submit her claim to arbitration. (See Pls.' Resp. 6-7; Ex. B ¶ 13.)

discussions from mutual assent. See Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n, 807 S.W.2d 559, 566 (Tenn. Ct. App. 1990) (relying on Restatement (Second) of Contracts § 26 (1981) to conclude that a contract had not been formed because the plaintiff had not shown that conversations "went beyond mere preliminary discussions"). Under that approach, advertisements and solicitations are generally considered invitations to make offers, not offers that may be accepted and form a binding contract. See Angus v. City of Jackson, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997) (concluding that a city's solicitation of bids did not constitute an offer and that there was no contract until a bid was entered and selected by the city); Coll. Mill Co. v. Fidler, 58 S.W. 382, 385 (Tenn. Ct. App. 1899) (concluding that a writing was an advertisement and distinguishing an advertisement from an offer to sell goods); see Restatement (Second) of Contracts, § 26 cmts. b, d (1981) (explaining that advertising and solicitations are "ordinarily not intended or understood" as offers). Under Nebraska law, solicitations and advertisements are similarly construed as "inviting offers, or suggesting the terms of a possible future bargain," not as making offers that, if accepted, would result in a binding contract. See Rhen Marshall, Inc. v. Purolator Filter Division, Purolator, Inc., 318 N.W.2d 284, 285 (Neb. 1982).

Under the law of Tennessee or Nebraska, Jacquelyn has not pled facts stating a plausible claim for breach of contract. The complaint is silent about how Meltech solicited entrants in the contest and what language it used.   The complaint merely states that Jacquelyn entered and won the contest.   (See Compl. ¶¶ 7, 17.)   Under Tennessee and Nebraska law, solicitations are generally construed as invitations for offers or preliminary negotiations, and Jacquelyn has not alleged facts demonstrating how Meltech's solicitation of entrants in its contest should be treated differently.   See Rhen Marshall, Inc., 318 N.W.3d at 285; Angus, 968 S.W.2d at 808; Coll. Mill Co., 58 S.W. at 385; Restatement (Second) of Contracts § 26 cmts. b, d.   Meltech's soliciting entrants in its modeling contest and Jacquelyn's entering were at most preliminary negotiations leading to their later written contract, not a manifestation of mutual assent to form a contract at that time.   Jacquelyn did not form a valid contract with Meltech by entering and winning the contest, and her breach of contract claim fails under both Tennessee and Nebraska law.   See Rhen Marshall, Inc., 318 N.W.3d at 285; Angus, 968 S.W.2d at 808; Coll. Mill Co., 58 S.W. at 385.

Assuming that Meltech's soliciting entrants in its contest and Jacquelyn's entering were a form of contract, any prior agreement would be superseded by the written contract she executed on May 8, 2008.   (See Ex. B.)   That written contract is

21

governed by Nebraska law.   (See Ex. B ¶ 13.)   Under Nebraska
law, unless a contract's terms are ambiguous, "the terms are to
be accorded their plain and ordinary meaning as the ordinary or
reasonable person would understand them." Thrower v. Anson, 752
N.W.2d 555, 561 (Neb. 2008) (citations omitted).   "A contract is
ambiguous when a word, phrase, or provision in the contract has,
or is susceptible of, at least two reasonable but conflicting
interpretations or meanings." Id.

    Jacquelyn's   May   8,   2008   contract   states   that   it
"constitutes the final, complete and exclusive agreement between
the parties with respect to the subject matter hereof and
supersedes and replaces any prior or contemporaneous agreements
or understandings, written or oral, concerning such subject
matter."   (See id. ¶ 13.)   Because that provision is not
ambiguous, it must be given its plain meaning. See Thrower, 752
N.W.2d at 561; (Ex. B ¶ 13).   The subject matter of the written
contract is the same as the subject matter of the contest—
Jacquelyn's provision of modeling services to Meltech.   (Compare
Compl. ¶ 17 (stating that she "entered a contest to become a
model for Defendant"), with Ex. B ¶ 1 (stating that, under the
contact, she agreed to provide "[p]rofessional modeling
services" to Meltech).)   Because the subject matter of the
written contract is the same as the subject matter of the
contest, under the terms of the written contract itself, any

prior agreements about Jacquelyn's modeling for Meltech are superseded. (See Ex. B ¶ 13.)

Jacquelyn has not alleged facts showing that she and Meltech formed a valid contract under Tennessee or Nebraska law based on her participation in Meltech's contest. Therefore, she has not stated a plausible claim for breach of contract. That claim is DISMISSED.

### 2. Unjust Enrichment

"Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966). Tennessee courts have explained that a plaintiff must prove three elements to recover for unjust enrichment: (1) "[a] benefit conferred upon the defendant by the plaintiff," (2) "appreciation by the defendant of such benefit," and (3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc., 407 S.W.2d at 155); Bennett v. Visa U.S.A., Inc., 198 S.W.3d 747, 756 (Tenn. Ct. App. 2006) (citation omitted). Tennessee courts have sometimes required a plaintiff to show two additional elements to recover for unjust enrichment: (1) that "[t]here is no existing, enforceable

23

contract between the parties covering the same subject matter," and (2) that "[t]he circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated."  See Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998) (citing Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995); see First Nat. of N. Am., LLC v. Marks, No. M2002-03104-COA-R3-CV, 2004 WL 1114574, at *5 (Tenn. Ct. App. May 18, 2004) (citation omitted).  "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust."  Freeman Indus., 172 S.W.3d at 525 (citing Paschall's, Inc., 407 S.W.2d at 155).

Justin alleges that "during the time his [w]ife was under contract" with Meltech, he "performed various acts on the website," such as submitting photographs and electronic media that contained images of himself, and "perform[ing] other functions for the website, including . . . filing and taking photographs of . . . Jacquelyn." (Compl. ¶¶ 21-23.)  He alleges that he was "never compensated" for those services. (Id. ¶¶ 22-23.)  Meltech argues that Justin has not alleged facts suggesting that he conferred an unjust benefit on Meltech or that Meltech appreciated that benefit. (See Def.'s Mem. 9.) The McKees respond that Justin provided various services to Meltech and that Meltech appreciated the benefit of those

services by posting the materials on its website. (See Pls.'
Resp. 4-5.)

"A benefit is any form of advantage that has a measurable
value including the advantage of being saved from an expense or
loss." Freeman Indus., 172 S.W.3d at 525. Although Justin has
alleged that he provided various services to Meltech, nothing in
the complaint suggests that those services were of any
measurable value to Meltech. See id. Justin does not allege
that, if he had not submitted images of himself to the website
or photographed and filmed Jacquelyn, Meltech would have
compensated someone else to do so. Although one can imagine a
scenario where Justin's services might have allowed Meltech to
avoid costs it otherwise would have borne, Justin has not stated
any facts to make that scenario plausible. For that reason, he
has not stated a plausible claim for unjust enrichment under
Tennessee law. See Freeman Indus., 172 S.W.3d at 525.

Even if Justin had provided Meltech with a benefit, his
unjust enrichment claim would fail for two additional reasons.
First, if a defendant "'has given any consideration to any
person' for the benefits received from the plaintiff, there is
no injustice in allowing the defendant to retain those benefits
without paying the plaintiff." Bennett, 198 S.W.3d at 756
(quoting Paschall's, Inc., 407 S.W.2d at 155). The facts
alleged in the McKees' complaint are that Justin provided

services to Meltech while Jacquelyn was under contract with Meltech. (See Compl. ¶¶ 21-22.) Because Meltech compensated Jacquelyn under its contract with her, Meltech has already given consideration for any benefit that Justin's services provided. See Bennett, 198 S.W.3d at 756. As her husband, Justin indirectly benefited from that consideration.

Second, to recover for unjust enrichment, the circumstances must "indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated." See Swafford, 967 S.W.2d at 324. Nothing in the complaint suggests that Meltech had any reason to believe that Justin expected to be compensated for his services. To the contrary, Meltech could have believed that Justin was a volunteer, assisting his wife, Jacquelyn, in carrying out her duties under her contract with Meltech.

For the foregoing reasons, Justin has not stated a plausible claim for relief for unjust enrichment, and his claim is DISMISSED.

### 3. Appropriation of Name or Likeness

Under Tennessee law, there is no independent cause of action for the appropriation of another person's name or likeness. Tennessee courts have noted that, under the Section 652A of the Restatement (Second) of Torts, the appropriation of another person's name or likeness is one of four distinct

categories of claims for invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. See West v. Media Gen. Convergence, Inc., 53 S.W.3d 640, 643 (Tenn. 2001) (outlining the four categories of invasion of privacy claims but recognizing a claim for false light invasion of privacy only); Harris v. Horton, No. M2008-02142-COA-R3-CV, 2009 WL 4801719, at *5 n.5 (Tenn. Ct. App. June 23, 2009); Restatement (Second) of Torts § 652A (1977). Although Tennessee courts have not always recognized these categories, "federal courts applying Tennessee law have used these categories in analyzing invasion of privacy claims." See Scarborough v. Brown Group, 935 F. Supp. 954, 963-64 (W.D. Tenn. 1995) (collecting cases) (citations omitted).

Justin argues that he has stated a claim for relief based on his allegations that Meltech appropriated his likeness by using his "images and other electronic media" without his consent "for [its] commercial gain." (See Pls.' Resp. 5; Compl. ¶¶ 26-27.) Meltech argues that Tennessee does not recognize a claim based on appropriation of name or likeness. (See Def.'s Mem. 9.)

Because Tennessee courts have relied on the Restatement approach to invasion of privacy in at least some cases, there is

authority for the proposition that appropriation of one's name or likeness may form the basis of a claim for invasion of privacy under Tennessee law.  <u>See, e.g.</u>, <u>West</u>, 53 S.W.3d at 643; <u>Harris</u>, 2009 WL 4801719, at *5.  However, an invasion of privacy claim "exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities."  <u>West</u>, 53 S.W.3d at 643.  There is no authority for the proposition that a person of ordinary sensibilities would be offended by a defendant's using an image or video of that person's likeness where he voluntarily provided the defendant with the image or video.  Although Justin never signed a written waiver, because he and his wife submitted materials to Meltech through the website, nothing in the complaint suggests that Meltech should have realized that using the images and videos of Justin would be offensive. (<u>See</u> Compl. ¶¶ 9, 11-12.)  For that reason, Justin has not stated a plausible claim for invasion of privacy, <u>see</u> <u>West</u>, 53 S.W.3d at 643, and his claim is DISMISSED, <u>see</u> <u>Iqbal</u>, 129 S. Ct. at 1949.

### 4. Violation of the TPRPA

Under the TPRPA, "[e]very individual has a property right in the use of that person's name, photograph, or likeness in any medium in any manner," that right is "assignable and licensable," and it does not expire when that person dies.

Tenn. Code Ann. § 47-25-1103.  The TPRPA also provides a private right of action:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian, or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable to a civil action.

Tenn. Code Ann. § 47-25-1105(a).

Justin alleges that, although he had not signed a waiver and release authorizing Meltech to use his image, Meltech used it in photographs and videos on the website (See Compl. ¶¶ 13-14.)  He also alleges that Meltech "has been in violation of [the TPRPA] . . . for knowingly using and/or infringing upon the use of Plaintiff Justin McKee's likeness in electronic media on the website without his consent."  (See id. ¶ 29.)  Meltech argues that no facts support the legal conclusion that it violated the TPRPA and that Justin consented to the use of his likeness on the website, even if he never signed a written waiver.  (See Def.'s Mem. 10.)  The McKees respond that the complaint states a plausible claim for relief under the TPRPA.  (See Pls.' Resp. 6.)

The TPRPA "does not prohibit <u>all</u> unauthorized uses of another's name or likeness." <u>Read v. Lifeweaver, LLC</u>, No. 2:08-CV-116, 2010 WL 1798704, at *11 (E.D. Tenn. May 5, 2010) (quoting <u>Apple Corps Ltd. v. A.D.P.R., Inc.</u>, 843 F. Supp. 342, 347-48 (M.D. Tenn. 1993)) (emphasis in original). It "only prohibits the unauthorized use of another's name or likeness 'as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of . . . solicitation of . . . purchases of products, merchandise, goods, or services." <u>Id.</u> (citation omitted). The purpose of the TPRPA is to protect individuals who use their names for "endorsement purposes." <u>Id.</u> (citation omitted); <u>see</u> <u>Apple Corps</u>, 843 F. Supp. at 347 ("Tennessee's legislature . . . has narrowed the common law prohibition, proscribing only the unauthorized use of another's name or likeness in advertising.").

Although Justin has alleged that Meltech used his likeness, he has not alleged that Meltech requested it or how Meltech used it. (<u>See</u> Compl. ¶ 12.) Nothing in the complaint suggests that Meltech used Justin's likeness for advertising or endorsement purposes. Because the TPRPA only prohibits use of an individual's likeness for advertising or endorsement purposes, Justin has not alleged facts showing a plausible claim under that act. <u>See</u> <u>Read</u>, 2010 WL 1798704, at *11; <u>Apple Corps</u>, 843 F. Supp. at 347. Therefore, his claim is DISMISSED.

**V.   Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.,
establishes a strong public policy favoring arbitration.  See
Morrison v. Circuit City Stores, 317 F.3d 646, 652-53 (6th Cir.
2003) (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,
460 U.S. 1, 24 (1983)).   Under the FAA, agreements to arbitrate
"shall be valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation of any
contract."   9 U.S.C. § 2.   Considering a motion to compel
arbitration, a district court "shall hear the parties, and upon
being satisfied that the making of the agreement for arbitration
or the failure to comply therewith is not in issue, the court
shall make an order directing the parties to proceed to
arbitration in accordance with the terms of the agreement."  9
U.S.C. § 4; Highlands Wellmont Health Network v. John Deere
Health Plan, 350 F.3d 568, 573 (6th Cir. 2003) (citation
omitted).

Meltech has alternatively moved to compel arbitration of
Jacquelyn's claims against it, arguing that the written contract
the parties executed on May 8, 2008, contains an arbitration
clause and that her claims "relate" to the written contract.
(See Def.'s Mem. 10-14.)  Jacquelyn concedes that the written
contract includes a binding arbitration clause, but argues that
her breach of contract claim relates to an entirely separate

agreement.  (See Pls.' Resp. 6-7.)  The Court has concluded that Jacquelyn has failed to state a claim for breach of contract based on any agreement outside the written contract.  Because she does not attempt to assert any claim based on the written contract, there are no remaining claims for the Court to direct to arbitration.  Meltech's motion to compel is DENIED AS MOOT.

**VI.  Conclusion**

Jacquelyn McKee has failed to state a plausible claim for breach of contract, and Justin McKee has failed to state plausible claims for unjust enrichment, invasion of privacy, or violation of the TPRPA.  Because Jacquelyn McKee raises no other claims, Meltech's motion to compel arbitration is moot.

For those reasons, Meltech's motion to dismiss is GRANTED, the McKees' claims are DISMISSED, and Meltech's motion to compel arbitration is DENIED AS MOOT.

So ordered this 9th day of May, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE